# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

records and information associated with the cellular telephone assigned call number (414) 544-2827 ("the Account"), more fully described in Attachment A.

Case No. 19-839 M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

records and information associated with the cellular telephone assigned call number (414) 544-2827 ("the Account"), more fully described in Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Section 922(g)(1) and 924(a)(2), Unlawful Transport of Firearms, Etc.

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Jeremy Loesch, Supervisory Deputy
Printed Name and Title

Sworn to before me and signed in my presence:

Date: February 27, 2019

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
Printed Name and Title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jeremy Loesch, being duly sworn, depose and state as follows:

## BACKGROUND AND EXPERIENCE

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned number (414) 544-2827 ("the SUBJECT PHONE") that is stored at premises controlled by **AT&T INC., AND ANY OF ITS SUBSIDIARIES AND AFFILIATES**, a wireless telephone service provider headquartered at **11760 US Highway 1, Suite 600, North Palm Beach, Florida, 33408**. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **AT&T INC., AND ANY OF ITS SUBSIDIARIES AND AFFILIATES** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B

2. I am a Supervisory Deputy with the U.S. Marshals Service, and have been employed with the U.S. Marshals Service for almost 16 years. As part of my duties, I investigate violations of federal and state laws, including those relating to fugitives. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

1

3. This affidavit is based upon my personal knowledge and information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit concerns a fugitive investigation taking place in the Eastern District of Wisconsin. The target of the investigation is Timothy Nash (hereinafter Nash).

4. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that that the information described in Attachment B will assist law enforcement in arresting Nash, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## SOURCES OF INFORMATION

6. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers participating in this and related investigations, and from records, documents and other evidence obtained during this investigation. Since this affidavit is being submitted for the limited purpose of obtaining call detail records, to include historical cell site information, I have not included every fact known concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for an order authorizing call detail records, to include cell site information.

## PROBABLE CAUSE

7.    The United States government, including the USMS, is investigating violations of Title 18, United States Code, Section 922(g)(1) and 924(a)(2), Unlawful Transport of Firearms, Etc., committed by Nash.

8.    On August 19, 2018, the Milwaukee Police Department responded to a subject with a gun complaint at the intersection of N. 7th St. and W. Galena St. within the City of Milwaukee. Upon their arrival Milwaukee Police Officers observed Nash standing in front of XXXX N. 7th St. Milwaukee, WI. The Officers made contact with Nash and subsequently located a loaded .45 caliber Ruger SR45 semi-automatic handgun directly around the corner from the address. The handgun was found to be loaded with one round of ammunition in the chamber and ten additional rounds of ammunition in the magazine. Nash's fingerpritns were found on the right side of the magazine.

9.    On September 11, 2018, Nash was charged by criminal complaint in Milwaukee County Circuit Court, Milwaukee, WI, with a single count of Possess Firearm – Convicted of a Felony in violation of Wis. Stat. § 941.29(1m)(a) and a summons to appear was mailed to Nash.

10.    On October 15, 2018, Nash failed to appear on the summons and a warrant for his arrest was issued through the Milwaukee County Sheriff's Office.

11.    On November 6, 2018, Nash was charged by indictment, case number 18-CR-203, in United States District Court for the Eastern District of Wisconsin, Milwaukee, WI, with a single count of Title 18, United States Code, Section 922(g)(1) and 924(a)(2), Unlawful Transport of Firearms, Etc. and a warrant for his arrest was issued through the Bureau of Alcohol Tobacco and Firearms (ATF).

12. On December 11, 2018, Nash appeared in Milwaukee County Circuit Court on the above mentioned charge where the gun charges against him were dismissed in lieu of the federal indictment described above.

13. On January 16, 2019, the United States Marshals Service Fugitive Task Force (USMS FTF) received a request for assistance in locating and arresting Nash from the ATF.

14. On January 18, 2019, your Affiant along with members of the USMS FTF conducted surveillance of XXXX W. Beatrice St. #1 Milwaukee, WI. This address was identified through local investigation as being a probable address for Nash. The occupant of the residence, Niesha Jones (hereinafter Jones) and Nash share a child together. At approximately 12:00pm Nash was observed driving a vehicle away from the residence with a male child in a car seat in the back seat of the vehicle. The child's age was consistent with the age of Nash's known child with Jones. An attempt to follow Nash was unsuccessful.

15. On January 24, 2019, your Affiant and members of the USMS FTF made contact with Jones at the Beatrice St. residence. A check of the residence did not locate Nash. During an interview with Jones it was learned that Nash did not live with her and when he was observed leaving her residence on January 18, 2019 he was only there to pick up his child. Jones revealed that Nash will pick up his child to spend time with him and will then drop the child off at day care. Jones provided Nash's employment as Sleep Number Beds and his phone number as 414-841-0369. Jones stated that she speaks and texts with Nash frequently at this number about their child. Jones stated that she would contact Nash when the USMS FTF left her residence and tell him to turn himself in.

4

16. On January 24, 2019, following contact with Jones, Nash's employment with Sleep Number Beds was confirmed. Nash's position was identified as an assistant to a delivery truck driver. It was learned that Nash had called in sick that morning through a person who identified themselves as Nash's Aunt. The unknown person called from phone number 262-573-2138.

17. On January 25, 2019, the USMS FTF conducted surveillance of a parking lot in Oak Creek, WI that Sleep Number Beds identified as their staging point for delivery truck drivers and their assistants. Nash was not located and it was later learned that Nash had again called in sick through a person identifying themselves as Nash's Uncle. The unknown person called from phone number 262-573-2138.

18. Phone numbers 414-841-0369 and 262-573-2138 were identified as belonging to AT&T. Subscriber and call records related to the phone numbers identified the subscriber for both phones as being a Tiffany Kelly (hereinafter Kelly) with an address of XXX W. Essex Ln. #297 Milwaukee, WI. The account containing both phones was suspended on February 5, 2019 for non-payment. Call records show that phone activity on Nash's phone number, 414-841-0369, ended on January 30, 2019. Activity on Kelly's phone number, 262-573-2138, ended February 5, 2019.

19. On February 20, 2019, your Affiant and members of the USMS FTF conducted surveillance of the Essex Ln. residence identified above. A black male wearing a red hooded sweatshirt was observed arriving at the residence and attempting to gain access to the residence. After approximately 10 minutes the unknown male walked away from the residence without having gained access and walked north. Approximately 6 blocks later the USMS FTF made

5

contact with the male and identified him as Travous Kelly, brother to Kelly. Travous was shown a photo of Nash who he positively identified as Kelly's ex-boyfriend. Travous stated that they were no longer together. While interviewing Travous a man who he identified as his father, Lamont Sims, walked up. Sims identified himself as Travous Kelly and Kelly's father. Sims identified a photo of Nash as "Tank", Kelly's ex-boyfriend and stated that they were no longer together. Known aliases of Nash include "Tank" and Tanky Boy".

20. Sims agreed to accompany the USMS FTF back to the Essex Ln. address and gave consent to check the residence for Nash which was negative. During an interview, Sims stated that Kelly and Tank (Nash) had broken up about a month prior. Sims stated that Kelly did not live at the residence but did frequently visit. Sims was unable to provide Kelly' current residence. Sims stated that Kelly lived with a friend but could not provide the friend's name either. Sims provided Kelly's current phone number as 414-429-7397.

21. Phone number, 414-429-7397, was identified as belonging to AT&T. Subscriber and call records related to the phone number identified subscriber information for the phone as belonging to a Mike Jones at XXXX W. Capitol Dr. Milwaukee, WI. This address was identified as a business, Platinum Cellular LLC.

22. A comparison of call records for Kelly's previously identified phone number, 414-573-2138, and her current phone number, 414-429-7397, identified a common called number of 414-544-2827. Kelly's previous phone, 414-573-2138, began communicating with the commonly called number on January 31, 2019. Tiffany's current phone, 414-429-7397, began contacting the commonly called number on February 5, 2019.

23. Phone number, 414-544-2827, was identified as being an AT&T phone number. Subscriber information and call records obtained identified the subscriber as an unnamed prepaid account with an address of 4241 W. Capitol Dr. Milwaukee, WI. This is the same address that Kelly's current phone number, 414-429-7397, is registered to. Records show that this phone number was activated on January 29, 2019. The call records show that this phone number is presently communicating with Jones' identified phone number, 414-458-8613, identified in paragraphs 13 and 14 and with Kelly's present phone number, 414-573-2138.

24. With Nash's previously identified phone stopping communication with Jones and Kelly on January 30, 2019 shortly before the account was suspended for non-payment and the new phone, 414-544-2827, being activated on January 29, 2019 and actively communicating with Jones and Kelly it is through my training and experience that I believe Nash is presently utilizing phone number 414-544-2827.

25. A comparison of call records from Nash's previously identified phone, 414-841-0369 and the newly identified phone, 414-544-2827, believed to be held by Nash show that the newly identified phone and his previously identified phone share 29 commonly called numbers amongst them being the top callers Jones and Kelly.

26. In my training and experience, I have learned that **AT&T, INC., AND ANY OF ITS SUBSIDIARIES AND AFFILIATES,** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e.,

7

antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

27. Based on my training and experience, I know that **AT&T, INC., AND ANY OF ITS SUBSIDIARIES AND AFFILIATES** can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as **AT&T, INC., AND ANY OF ITS SUBSIDIARIES AND AFFILIATES** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

28. Based on my training and experience, I know that wireless providers such as **AT&T, INC., AND ANY OF ITS SUBSIDIARIES AND AFFILIATES** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **AT&T, INC., AND ANY OF ITS SUBSIDIARIES AND AFFILIATES** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their

8

normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

30. I further request that the Court direct **AT&T, INC., AND ANY OF ITS SUBSIDIARIES AND AFFILIATES** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **AT&T, INC., AND ANY OF ITS SUBSIDIARIES AND AFFILIATES**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

31. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

# ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number (414) 544-2827 ("the Account") that are stored at premises controlled by **AT&T, INC., AND ANY OF ITS SUBSIDIARIES AND AFFILIATES** ("the Provider"), headquartered at **11760 US Highway 1, Suite 600, North Palm Beach, Florida, 33408** .

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period January 29, 2019 to present.

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 922(g)(1) and 924(a)(2), Unlawful Transport of Firearms, Etc., involving by Nash since August 19, 2018.